U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - LAKE CHARLES

OCT 3 0 2007

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAKE CHARLES DIVISION

| | | |
|---|---|---|
| KERR-MCGEE OIL & GAS CORP. | : | DOCKET NO. 2:06 CV 0439 |
| | | |
| VS. | : | JUDGE MINALDI |
| | | |
| C. STEPHEN ALLRED, ASSISTANT | : | MAGISTRATE JUDGE WILSON |
| SECRETARY FOR LAND & | | |
| MINERALS MGT., AND THE DEPT. | | |
| OF THE INTERIOR | | |

## MEMORANDUM RULING

Before the court is plaintiff Kerr-McGee Oil & Gas Corp.'s ("Kerr-McGee") Motion for

Summary Judgment and C. Stephen Allred and the Department of the Interior's ("the Interior")

Cross-Motion for Summary Judgment.[1]

## FACTS

Congress enacted the Outer Continental Shelf Deepwater Royalty Relief Act of 1995

("DWRRA"), codified at 43 U.S.C. § 1337, to encourage the exploration of oil and gas in the

Gulf of Mexico's deepwater, where the risks and costs of operation were high.[2]  Kerr-McGee has

invested over $3.5 billion to develop deepwater leases in the Gulf.[3]  The eight deepwater leases

for which Kerr-McGee was ordered to pay royalties contain language that makes mandatory

---

[1] Pl.'s Mot. for Summary Judgment [doc. 28]; Def.'s Cross-Mot. for Summary Judgment
[doc. 39].

[2] S. REP. NO. 103-248, at 3-4 (1994).

[3] Pl.'s Compl. ¶ 2.

1

royalty relief[4] subject to specified price thresholds.[5]

On January 6, 2006, Acting Assistant Secretary Burton signed an Order directing Kerr-McGee to pay royalties on natural gas it produced in 2003, and on both oil and natural gas produced in 2004, for eight leases Kerr-McGee operated under the DWRRA.[6]  The Burton Decision found that the average annual price of natural gas was in excess of the price threshold for 2003 and 2004, and the average annual price of oil was in excess of the price threshold in 2004.[7]  The Burton Decision is a final agency action subject to judicial review.[8]  On March 17, 2006, Kerr-McGee filed for declaratory judgment and injunctive relief against the Department, challenging the Burton Decision.[9]

## BACKGROUND OF THE CONTROLLING STATUTES AND THE BURTON DECISION

This action arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et*

---

[4] The DWRRA of 1995 eliminates the Secretary's discretion to set the volume of royalty suspension for leases enacted between November 28, 1995 and November 28, 2000.  43 U.S.C. § 1337(a)(3)(C)(i).

[5] Under the terms of the lease between Kerr-McGee and the Interior, Kerr-McGee makes royalty payments to the Interior if the commodity price of oil or case exceeds a prescribed threshold level (a "price threshold"), even when the lease has not yet produced the volume of oil and gas that was to be royalty-free under the DWRRA.  United States Department of Interior, Order to Report and Pay Royalties and Interest Due Under Identified Offshore Federal Oil and Gas Leases (Jan. 6, 2006) ("The Burton Decision"), at 2-4.  The Burton Decision is so named because it was signed by Acting Assistant Secretary Burton.  *Id.* at 11.

[6] *Id.* at 10.

[7] *Id.*

[8] *Id.* at 11.

[9] Pl.'s Compl.

*seq.*, the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*, and the

DWRRA, 43 U.S.C. § 1337.

A.) The OCSLA

The OCSLA gives the Secretary of the Interior the authority to issue and administer oil

and gas leases on the outer continental shelf and to promulgate implementing regulations.  43

U.S.C. §1334(a).  The Minerals Management Service ("MMS") administers the OCS leasing

program by conducting lease sales.  Pursuant to the OCSLA, the typical royalty for offshore

deepwater leases is one-sixth.  *Id.*

B.) The DWRRA

The DWRRA amended the OCSLA and gave the Secretary the authority to suspend

royalties on certain volumes of initial production from the deepest areas of the Gulf.  43 U.S.C.

§1337(a)(3)(C)(i) & (ii).  The DWRRA established three specific schemes for royalties from

deepwater leases.  *Id.*  §1337(a)(3)(C)(v)-(vii).

First, companies with leases existing on November 28, 1995 were not exempt from

paying on new production until the volume exceeded the prescribed price threshold level.  *Id.*

Section 302 permits existing lessees to apply for royalty relief, which the Secretary would award

if the lease would otherwise not be economic.  *Id.* §1337(a)(3)(C)(ii).  Additionally, Section 302

expressly provides that no royalty relief is allowed if the price of oil or gas meets a price

threshold, as statutorily defined by Congress.  *Id.*  §1337(a)(3)(C)(v)-(vi).  MMS implemented

price threshold provisions for these leases.  30 C.F.R. § 203.78.

Second, Congress required the Interior to provide royalty relief to leases enacted between

November 28, 1995 and November 28, 2000 ("Mandatory Royalty Relief Leases").  43 U.S.C.

§1337 (Note); *see also Santa Fe Synder Corp. v. Norton*, 385 F.3d 884 (5th Cir. 2004).

Mandatory Royalty Relief Leases are governed by the bidding system authorized in

Subparagraph H of §1337.  *Id.*  § 1337(a)(1)(H).  In Section 304, however, Congress

"immediately excepts and replaces Interior's discretion [under Section 303] with a fixed royalty

suspension...." *Santa Fe Synder*, 385 F.3d at 892 (noting that under Pub. L. 104-58, § 304,

royalties are suspended for specific volumes and water depths).  Eight of Kerr-McGee's

Mandatory Royalty Relief Leases are at issue in this suit.

Third, leases issued after the five-year period ended on November 28, 2000 are governed

by Section 303, and the Secretary is authorized to provide royalty relief and to impose price

thresholds.  43 U.S.C. §1337(a)(3)(C).

### C.) The Burton Decision

The Burton Decision interpreted Section 304 of the DWRRA as it applied to Kerr-

McGee's eight deepwater leases, and found that Kerr-McGee owed the Interior royalties from

these leases because price thresholds were satisfied.  The Burton Decision at 4.  The Burton

Decision found that the royalty relief available to the eight Kerr-McGee leases was limited by

price thresholds contained in the terms of the leases, imposed pursuant to Congressional

authority.  *Id.*  The Burton Decision rejected Kerr-McGee's argument that Mandatory Relief

Leases are not subject to price thresholds below the minimum volume of royalty-free production.

*Id.*

The Burton Decision first rejected Kerr-McGee's interpretation of *Santa Fe Synder*,

stating that *Santa Fe Synder* did not discuss price thresholds and is therefore not a basis for Kerr-

McGee to avoid enforcement of the price threshold provisions in its leases.  *Id.*  Thus, the Burton

4

Decision found that the price threshold provisions promulgated in 1337(a)(1)(H) apply to leases executed between November 28, 1995 and November 28, 2000, and therefore apply to Kerr-McGee's leases, regardless of whether minimum volume of royalty-free production was first produced. The Burton Decision also applied the price thresholds to assess how much money Kerr-McGee owes the Department. *Id.* at 4-8.

## STANDARD OF REVIEW

Courts review agency action under the APA by first determining whether the agency decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or]...in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A). When reviewing an agency action, a court first determines:

> [w]hether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines that Congress has not addressed the precise question at issue...the question for the court is whether the agency's answer is based upon a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Res. Def. Counsel*, 467 U.S. 837, 842-43 (1984). "In reaching a determination whether Congress has spoken directly on an issue, courts are free to consider both the plain language and meaning of the statute and any pertinent legislative history." *Ghiglieri v. Sun World Nat'l Ass'n*, 117 F.3d 309, 313 (5th Cir. 1997).

Under *Chevron*'s second prong, if a court finds the statute ambiguous, the court examines whether "the agency's answer is based upon a permissible construction of the statute." *Chevron*, 467 U.S. at 843. An agency is entitled to "substantial deference" when interpreting its own regulations, and, accordingly, the agency interpretation must be followed unless it is plainly

5

wrong or inconsistent with the regulation. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994). "It is elementary administrative law that an agency must operate within the confines of its own regulations." *Am. Petroleum Inst. v. E.P.A.*, 787 F.2d 965, 975 (5th Cir. 1986).

A court should grant a motion for summary judgment when the file demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that demonstrate the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.* If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.*

## ANALYSIS

The crux of this case is whether Section 304, which requires mandatory royalty relief for specified volumes, also stripped the Interior of its discretion to set price thresholds that would apply before a Mandatory Relief Lease produced the minimum volume of royalty-free production. Kerr-McGee contends that Mandatory Relief Leases are not subject to price thresholds below the minimum volume of royalty-free production, whereas the Department argues it retained the discretion to set price thresholds below the minimum volume of royalty-free production.

6

## A.) *Chevron* Review of the Burton Decision

Kerr-McGee contends that the Burton Decision is unlawful under the first step of *Chevron*, because Congress clearly articulated its intent to establish mandatory royalty relief for specified volumes in the DWRRA. Kerr-McGee argues that the DWRRA's mandatory royalty relief provision, Section 304, also prevents the Interior from enacting price thresholds for volumes below the minimum volume articulated in the DWRRA. Accordingly, Kerr-McGee maintains that the Burton Decision was contrary to law because the defendants conditioned royalty relief in Kerr-McGee's Mandatory Relief Leases upon commodity prices for oil and gas remaining below price thresholds.[10]

The Interior argues that the DWRRA clearly established the authority of the Interior to establish price thresholds on new leases. The Interior argues that Section 304 did not deprive the agency of its ability to establish price thresholds because Section 304 specifies the use of the Section 303 bidding system, which permits price thresholds, and nothing in Section 304 removes the authority for price thresholds. Thus, the Interior argues that price thresholds are permissible. Moreover, the Interior argues that *Santa Fe Synder* should be limited to its holding that leases enacted between 1996-2000 contained mandatory royalty relief for minimum volumes of production. The Interior argues that *Santa Fe Synder* does not preclude the imposition of price thresholds below the minimum volumes for which royalty relief was to be mandatory.

The Fifth Circuit interpreted Sections 303 and 304 of the DWRRA as they pertain to new production requirements for Mandatory Royalty Relief leases. *Santa Fe Synder*, 385 F.3d at 883-84. Section 303 added a new bidding system that gave the Interior the authority to lease any

---

[10] Pl.'s Compl. 13-14.

7

water depth in any location with royalty relief fashioned according to the Interior's discretion.  43

U.S.C. §1337(a)(1)(H).  The *Santa Fe Synder* court found that this power, however, was

tempered by the next section, where Congress replaced the Interior's discretion to fashion royalty

relief with a fixed royalty suspension scheme based on volume and water depth.  385 F.3d at 892;

*see also* 43 U.S.C. §1337 (Note).  Thus, the royalty relief for Mandatory Royalty Relief leases is

automatic and unconditional.

The *Santa Fe Synder* court found that Section 304 clearly articulated Congress's

unambiguous intent that a suspension of royalties shall be set at the volume levels provided for in

the statute.  385 F.3d at 892-93 (Section 304 dictates that "the suspension of royalties shall be set

at a volume of not less than [states differing amounts varying on water depth]").  In interpreting

Section 304, the *Santa Fe Synder* court held that:

> Section 304 mandates that, without exception, based only on the objective
> factors of water depth, location of the lease block and date of the lease sale,
> all leases meeting these objective criteria are entitled to receive the
> suspensions of royalties benefit, which the Secretary may not set at a volume
> less than the particular volume assigned for each water depth.  The statute is
> unambiguous on this point.

*Id.* at 891.  The *Santa Fe Synder* court found that the Interior's addition of a new production

requirement was contrary to law and thus the Fifth Circuit did not proceed beyond *Chevron*'s

first step.  *Id.* at 892-93.

The price threshold requirement found in Kerr-McGee's Mandatory Royalty Relief leases

is similarly unlawful under the plain text of the DWRRA because DWRRA's Section 304,

applying to new leases, clearly requires minimum royalty relief.  The Interior has no discretion to

enact a price threshold requirement that applies to volumes below the minimum volume of

8

royalty-free production. Because the Interior imposed price threshold requirements on Kerr-McGee's eight deepwater leases that would require Kerr-McGee to pay millions of dollars in royalties before it had even produced the minimum volume of royalty-free production, the Interior exceeded its Congressional authority. Thus, under *Chevron*'s first step, the Interior's action is unlawful because it contradicts the plain, unambiguous text of the statute.

### B.) The Interior's Affirmative Defenses

The Interior argues that even if the agency action was contrary to law, several affirmative contractual defenses apply that nonetheless require Kerr-McGee to pay royalties in accordance with the price threshold language in its contract. Both parties now agree that the first two defenses are moot. The remaining three defenses that the Interior proffers are: 1.) estoppel, 2.) waiver, and 3.) mutual mistake. The Interior is not moving for summary judgment on the remaining three defenses, and contends that there are outstanding issues of material fact that preclude summary judgment on these defenses. Kerr-McGee does, however, move for summary judgment as a matter of law on these defenses.

It is well settled that "if government officials make a contract they are not authorized to make, in violation of a law enacted for the contractor's protection, the contractor is not bound by estoppel, acquiescence, or failure to protest." *LaBarge Products Inc. v. West*, 46 F.3d 1547, 1552 (Fed. Cir. 1995); *see also Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339 (Fed. Cir. 2005) (holding that the Government's defenses of estoppel and waiver did not apply because such remedies are not available when the government makes illegal contracts). The Interior also argued contractual defenses applied in *Santa Fe Synder*, but the *Santa Fe* court rejected these arguments, noting that the issue of mandatory relief levels was based on statutory interpretation,

9

not contractual interpretation.  *Id.*

Because contractual defenses are not available when the Government makes a contract contrary to law, the Interior's affirmative defenses are unavailing.  Accordingly, Interior's affirmative defenses will be dismissed as a matter of law.

Lake Charles, Louisiana, this ___ day of _____, 2007

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

10